Peninsula Shipbuilding Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 5741.    Promulgated November 21, 1927.

*C. E. McCulloch, Esq.*, and *Stiles W. Burr, Esq.*, for the petitioner. *Alva C. Baird, Esq.*, for the respondent.

192

OPINION.

SMITH: In the letter addressed to the petitioner under date of May 26, 1925, the respondent determined deficiencies in tax against the petitioner for the years 1918, 1919, and 1920 in the aggregate amount of $117,706.70. In his letter he stated:

It is further held * * * that you are entitled to deductions from income on account of obsolescence actually sustained, since there was a definite determination on your part on or about November 15, 1918, that at a future time reasonably susceptible of definite determination, your plant would have no useful value, and would therefore be abandoned. The latter date in your case was June 3, 1920. This is in accordance with the contention of your representative as stated at the oral hearing on your case.

In view of the foregoing the following adjustments have been made:

(1) Depreciation at 10% on cost of plant and equipment has been allowed for the period January 1, 1918 to November 15, 1918.

(2) The depreciated cost of all plant and equipment on hand as at November 16, 1918, less adjustment for salvage, has been spread ratably over the period November 15, 1918 to June 3, 1920 and allowed as obsolescence.

(3) The cost of plant and equipment acquired subsequent to November 16, 1918, in order to carry out your contracts with the U. S. Shipping Board, less adjustment for salvage, has been spread ratably over the period from date of acquirement to June 3, 1920, and allowed as obsolescence.

(4) The amount of $200,000.00 allowed by the United States Shipping Board, on account of depreciation of plant, has been included in income for the years 1918, 1919, and 1920, apportioned to each year on the basis of the amount of depreciation chargeable to the boats completed within the year, at the rates of 30% for the first two contracts and 20% for the third contract.

In its petition to this Board the petitioner alleges as error on the part of the respondent as follows:

(a) The Commissioner of Internal Revenue erred in including in income for the years 1918, 1919 and 1920, the sum of $149,763.01 received by the taxpayer in 1923 from the United States Shipping Board Emergency Fleet Corporation in compromise settlement of a larger amount claimed by the taxpayer to be due, which claim of the taxpayer was disputed and denied in toto by the United States Shipping Board Emergency Fleet Corporation during all of the years

1918, 1919 and 1920, and was not determined or liquidated until 1923, in which year it was paid to the taxpayer.

(See paragraph (4) on page one of the *Statement* attached to the deficiency letter of May 26, 1925, where it is said:

"(4) The amount of $200,000 allowed by the United States Shipping Board, on account of depreciation of plant, has been included in income for the years 1918, 1919, and 1920, apportioned to each year * * *.)"

(b) The Commissioner of Internal Revenue erred in determining that there is now due from the taxpayer for the years 1918, 1919 and 1920 income and profits taxes in the sum of $117,706.70 or any sum whatsoever in excess of approximately $12,000.

In his answer to the petition the respondent denied that the Commissioner erred in determining the taxpayer's tax liability for the years 1918, 1919, and 1920.

At the hearing of this appeal counsel for the respondent stated as follows:

Mr. LOVELESS: May it please the Board, the question involved in this case is one of the utmost importance. The taxpayer had three contracts with the Government for the erection of ships. These contracts, or copies of them, have been stipulated and will be offered in evidence. Under these contracts it was explicitly provided that the depreciation should constitute a part of the cost of the ships to be borne by the United States Government.

The taxpayer over the years 1918, 1919 and 1920 was allowed by the representatives of the Government in its plant the amount of $50,236.99 as depreciation on the plant. The taxpayer was not satisfied with that allowance and the deposition shows and so will the contract that that allowance was not final.

The taxpayer filed with the Shipping Board the claim for depreciation, totaling some $249.000. In 1923 that claim for two hundred and forty-nine odd thousand dollars was allowed by the Government for $200,000; that included the $50,236.99 that was previously allowed, leaving a difference of $149,763.01. Now the taxpayer's attorney in his opening statement raised the question of whether or not that constituted income in the years 1918, 1919 and 1920 or 1923 when it was paid.

Mr. SMITH: Just one point. What constituted income, the $149,000?

Mr. LOVELESS: Yes. Now get this straight. The $149,763.01, not the $200,000, which represents the total, never constituted income at any time. It was simply a repayment by the United States Government of cost which it was obligated under the contract to bear, which had previously been borne by this taxpayer in the years 1918, 1919 and 1920.

The Commissioner is merely throwing back into the cost of the years 1918, 1919 and 1920 these amounts, because the Commissioner said that they were the years in which the costs were incurred in the construction of the ships, and therefore those were the years in which it should be reflected in the accounts of the taxpayer.

To put this in the year 1923 would be to say that this constituted income in the year 1923. It never constituted income.

At the time that the petitioner entered into its first contract with the United States Shipping Board Emergency Fleet Corporation on May 15, 1917, it had a shipbuilding plant which represented a capital expenditure of $110,116.04. To carry out its contract with the Emer-

gency Fleet Corporation it was necessary for it to enlarge its plant. The total additions made to its plant from April 6, 1917, to June 3, 1920, at which time it completed its contracts with the Government and finished active operations, cost $193,339.21. At the time the contracts were entered into it was the expectation of the petitioner that the Government would bear the cost of necessary additions. This was in accordance with its understanding of the terms of the contract. The auditors of the Emergency Fleet Corporation refused, however, to sanction the extensions deemed to be necessary by the petitioner with the result that the petitioner made such extensions at its own expense. Only a small part of the extensions made by the petitioner was authorized by the Emergency Fleet Corporation in advance of the making of such extensions and was paid for during the years 1918, 1919, and 1920. It was contemplated by all parties concerned that any depreciation allowable with respect to the plant should be spread over the period of operations of the petitioner on the war contracts. It was fully appreciated by all that the plant would have only a salvage value upon the completion of such contracts.

The petitioner made claim for greater amounts for depreciation than were allowed by the Emergency Fleet Corporation. This depreciation related not only to the war plant investment items but also to prewar plant investment items. There was also in dispute in certain instances the correct rate to apply to certain items which were added by the Emergency Fleet Corporation. These items were in dispute during the taxable years and were not settled until 1923.

In the determination of the deficiencies herein involved the respondent spread the cost of the prewar plant and of the war plant over the tax years herein involved in a manner satisfactory to the petitioner. He added to the gross income of each of the years, however, prorated portions of the additional allowance made by the Emergency Fleet Corporation to the petitioner in 1923 in the amount of $149,763.01, adding to the gross income of 1918, $8,948.34; of 1919, $83,467.42; and of 1920, $57,347.25. These additions to gross income had the effect of increasing the net income in like amounts. The petitioner objects to such additions to gross and net income for the tax years in question and insists that the amount of $149,763.01 in question was income of the year 1923; that the respondent was in error in adding to the gross income of the tax years in question the amounts above stated and that the deductions from gross income allowed for those years by the respondent in his deficiency letter for depreciation and obsolescence were correct.

The applicable provisions of the taxing statutes are as follows:

That in the case of a corporation subject to the tax imposed by section 230 the term "net income" means the gross income as defined in section 233 less

the deductions allowed by section 234, and the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226. (Section 232, Revenue Act of 1918.)

(b) The net income shall be computed upon the basis of the taxpayer's. annual accounting period * * *· in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * * (Section 212, Revenue Act of 1918.)

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

*         *         *         *         *         *         *

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence;

(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities ·or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under 'this title or previous Acts of Congress as a deduction in computing net income. * * * (Section 234, Revenue Act of 1918.)

We will consider first the question whether claims made by the petitioner against the Emergency Fleet Corporation for depreciation as an element in determining the cost of the vessels built during the taxable year were accruable items. In numerous appeals the Board has held that disputed and contested claims not set up on the books of account of taxpayers are not accruable items of income or deductions therefrom until the year of actual settlement. In *Appeal of Brighton Mills*, 1 B. T. A. 392, we said:

An alleged liability of the taxpayer in 1920 for a failure to fulfill a condition precedent to the other party's performance of a contract must be clearly established and must be then recognized by the parties in order to result in an accrued deductible loss in the year of such alleged breach. The bringing of suit in 1922 and payment in settlement in 1923 do not under the circumstances of the record entitle the taxpayer to deduction of loss in 1920.

To the same effect see *Citizens Trust Co. of Utica*, 2 B. T. A. 1239; *Coghlin Electric Co.*, 3 B. T. A. 1071; *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; *New Process Cork Co.*, 3 B. T. A. 1339; *Bump Confectionery Co.*, 4 B. T. A. 50; *Lane Construction Corporation*, 4 B. T. A. 1133; *Empire Printing & Box Co.*, 5 B. T. A. 203; *Gopher Granite Co.*, 5 B. T. A. 1216; *Frank J. Jewell*, 6 B. T. A. 1040; *Great Northern Ry. Co.*, 8 B. T. A. 225.

From the evidence of record petitioner had no certainty of ever receiving from the Emergency Fleet Corporation any part of the

claims which it was making against it for depreciation. The auditors working on the case steadfastly refused to grant the claims of the petitioner and the denial of such claims was confirmed by superior officers. We are of the opinion that no portion of the amount of $149,763.01 was income of the taxable years involved in this proceeding.

The question next arises as to whether the Board was in error in its former opinion in holding that these were claims for amortization under subdivision (8) of section 234(a) of the Revenue Act of 1918 and as such, subject to adjustment in the light of the settlement of the claims in 1923. (See section 234(a) of the Revenue Act of 1924.) The contracts between the petitioner and the Emergency Fleet Corporation did not provide for any deduction for amortization of war facilities. They simply provided for depreciation. The respondent has not found that the deductions were for amortization. The amounts allowed as deductions for the taxable years were allowed as depreciation and obsolescence and were allowed under subdivision (7) of section 234(a) of the Revenue Act of 1918. The allowances would have been made if there had been no provision in the statute for an allowance for amortization. This is upon the understanding reached by the petitioner and the Emergency Fleet Corporation that the plant would have only a salvage value upon the termination of the war and completion of the contracts.

The allowance for amortization contained in subdivision (8) of section 234(a) of the Revenue Act of 1918 is a special provision giving relief in a particular class of cases. The claims made by the petitioner against the Emergency Fleet Corporation were, as stated above, not only for depreciation on the war plant but also upon the prewar plant. The allowance finally made by the Emergency Fleet Corporation was not specifically for depreciation upon the war plant but was in settlement of all claims made by the petitioner for depreciation on both the war plant and the prewar plant. We are therefore of the opinion that the settlement of this case in no wise involves section 234(a) (8) of the Revenue Act of 1918.

We now come to the question as to whether in the determination of a reasonable amount for the allowance of depreciation and obsolescence of plant the amounts determined by the respondent in his deficiency letter to this petitioner should in any wise be reduced by reason of the fact that in 1923 the Emergency Fleet Corporation allowed a larger amount for depreciation than it had been willing to allow during the taxable years. It has been argued by the respondent that the allowance for depreciation and obsolescence should be based upon the cost of the plant to the petitioner and that the cost of the plant should be reduced by the reimbursement made to the petitioner in 1923. We are of the opinion, that the allowable deduc-

tions for depreciation and obsolescence should not be made to depend upon the settlement made with the petitioner by the Emergency Fleet Corporation in 1923. The cost of both the prewar plant and the war plant was borne by the petitioner in the first instance. Title to the plant always remained in the petitioner. This is evidenced by the fact that it was the petitioner which sold the plant in 1921, and that it did not account to the Emergency Fleet Corporation for any part of the proceeds of the sale. We therefore think that the reasonable allowance for depreciation and obsolescence for the tax years involved should not be reduced by the amount paid to it by the Emergency Fleet Corporation in 1923.

The amount of $149,763.01 received by the petitioner from the Emergency Fleet Corporation in 1923 was income of 1923, and did not affect its taxable income for prior years.

The opinion in this case, 5 B. T. A. 739, is revised accordingly.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

VAN FOSSAN and MILLIKEN did not participate.

STERNHAGEN and MURDOCK concur in the result only.

PHILLIPS dissents.