## APPEAL OF NEW PROCESS CORK CO.

Docket No. 5994. Submitted February 8, 1926. Decided April 20, 1926.

1. In 1922 petitioner on the accrual basis entered upon its books as a closing entry of 1921 and paid an amount in settlement of a lawsuit against it for breach of contract begun in 1921. *Held,* the amount was not deductible for 1921.

2. An estimate entered in 1922 as of 1921 of attorneys' fees for services performed in 1921, which were not billed or paid until 1922, *held* not deductible for 1921.

*William R. Donaldson, C. P. A.,* for the taxpayer.
*George G. Witter, Esq.,* for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner determined a deficiency of $15,086.78 income and profits taxes for the calendar year 1921, which the petitioner

contests on the ground that it was entitled to deduct the amount paid in 1922 in settlement of a lawsuit for breach of contract brought against it in 1921, and also to deduct an amount paid in 1922 for lawyers' services performed in 1921.

FINDINGS OF FACT.

The petitioner, a New York corporation, made a contract in 1920, under which it was to be supplied with cork waste. In 1921 it refused to accept further deliveries. In April, 1921 suit was brought against the petitioner for damages aggregating a sum of $65,000 or $75,000, arising from the alleged breach of contract. The officers consulted counsel in New York and were advised that they "were in trouble" and "had no case." They then consulted counsel in New Jersey, where the suit was pending, and were told that they "were in trouble and that the only thing [they] could do was to get out of it the best way [they] could." During 1921 they believed, after conference with attorneys, that petitioner had broken its contract and was legally liable for damages in some amount. A general denial was interposed by the petitioner as its answer in the lawsuit. Negotiations were carried on for settlement throughout the remainder of the year 1921, but the officers did not in 1921 know how much petitioner would be required to pay. They authorized counsel to begin negotiations with an offer of settlement of $9,400.

No amount was recorded on the books within the year 1921. The books were kept open until March, 1922, and among the closing entries at that time the petitioner entered an amount first of $10,000, as a reserve for legal expense "set up to cover an anticipated loss in the above suit." This entry was made in the journal and antedated December 31, 1921. Later, among the closing entries dated December 31, 1921, an amount of $15,000 was entered "to reserve for lawsuits * * * to set up provision for" the suit in question, and another closing entry of $2,500 was made and dated December 31, 1921, "to reserve for lawsuit * * * to increase the above reserve to equal settlement made." These three entries aggregating $27,500 were duly posted to a ledger account entitled "reserve for settlement lawsuit," and dated in the account December 31, 1921. The same account shows a debit of two items dated March 15, 1922, one being a note payable June 15 for $7,500 and the other a voucher for $20,000. The suit was settled in March, 1922, for $27,500, before petitioner's books were ruled down and closed for the year 1921.

The New Jersey law firm retained by the petitioner was to be paid, not on a contingent basis but for services rendered. No amount of compensation was agreed upon and no bill was rendered during the year 1921. The firm performed services during 1921. No entry

was made upon the books during the year 1921, but before closing the books for that year the petitioner in 1922 made a closing entry in the journal, which was duly posted to the ledger, setting up a reserve for legal fees in connection with this suit amounting to $1,000. This was the petitioner's estimate of the fee to be paid. A bill was rendered in 1922 and paid in the amount of $1,500.

The petitioner kept its accounts and made its return upon the accrual basis, and upon its return for the year in question it deducted $28,500. The Commissioner disallowed the deduction and duly notified the taxpayer of a deficiency by reason thereof amounting to $15,086.78.

OPINION.

STERNHAGEN : The petitioner, relying upon *Producers Fuel Co.*, 1 B. T. A. 202, and *United States* v. *Anderson*, 269 U. S. 422, urges the right to deduct in 1921 both the amount of its liability as ultimately agreed upon in 1922 and its estimate of its attorneys' fees for the services rendered in respect of the suit. The controlling facts, it contends, are that the contract was broken by it in April, 1921, and that the amount of its liability was entered in its accounts before they were actually closed for 1921. The Commissioner, on the other hand, contends that, since the contract is not in evidence, nor the pleadings in the lawsuit, it can not be said that there was a liability in 1921, and also that, since there was no admission of liability and no entry made within the year in question, the petitioner's claim would stretch the *Producers Fuel* decision beyond any reasonable limit.

The Commissioner, in our opinion, has treated the situation correctly. While it is true that the Supreme Court in the *Anderson* case used language which, if separated from its context, might be read as a recognition of a taxpayer's right to deduct estimated reserves set up by it upon its books for the years when the related earnings were derived, there is no reason to believe that the court went beyond its traditional custom of deciding the matter in hand. The court had before it the question of deducting Federal munitions taxes treated by the taxpayers upon their books as accrued within the year 1916. The question of tax accruals had been seriously debated for some time and the arguments on both sides were concerned not so much with accruals generally as with accruals of taxes in particular; and especially under the provisions of the Revenue Act of 1916. It was to this that the court directed its attention. and this alone was adjudicated. The Board would not be justified in assuming that the court, without information or argument, intended to overthrow the established law that books of account are only evidentiary and not conclusive of liability, *Doyle* v. *Mitchell*

*Brothers Co.*, 247 U. S. 179; or to leave it to each taxpayer to determine for itself whether its bookkeeping system required that a particular deduction should be applied to offset the earnings of a particular year. These are still questions to be decided in each particular case upon sound principles applicable to the particular case.

Here we have a situation in which the petitioner had a contract, made in 1920, to be supplied with, and presumably to pay for, some of its raw material. How the contract was to be performed, whether by periodic shipments in specific quantities at stated times, or only in such amounts and at such times as from time to time requested by the petitioner, does not appear, for the contract is not before us. It is simply stated and admitted that in April, 1921, the petitioner refused to accept further deliveries and that the vendor brought suit for damages. The petitioner, it is said, after consultation with its attorneys, regarded ·itself as subject to liability, although it employed counsel to defend the suit and formally denied liability. This is all that happened in 1921. The formal pleading of a general denial is not, to be sure, much indication as to the existence of a liability, but in view of the uncertainty of litigation it does indicate that during the year 1921 almost anything might have happened to affect this alleged liability. The most that the petitioner had was an estimate of the ultimate outcome. If it had failed to place any figure upon its books, could anyone have criticized it? Suppose that, instead of settling in March, 1922, final adjustment by either litigation or settlement had not been made for several years?

The situation of the *Producers Fuel Co.* was substantially different, for that corporation, as we said in *Brighton Mills*, 1 B. T. A. 392, "when it refused to perform its contract, admitted its liability, made an offer in settlement, and before the close of the tax year entered the full amount of its ultimate liability upon its books." This petitioner did not admit its liability, and although it made an offer in settlement out of all proportion to the vendor's demand and very materially less than the amount ultimately paid, did not enter any amount upon its books within the tax year. So far as we know, there may have been no liability in the tax year, and certainly there was no act of recognition by the petitioner of such a liability. The employment of counsel and a nominal offer of settlement is too frequently the price of peace for this Board to regard it as a significant recognition of liability accrued.

The item of $1,000 sought to be deducted as a legal fee is clearly not deductible. The mere fact that services had been performed does not establish an accrual of an amount erroneously estimated to be the probable compensation which would be payable therefor.

*The deficiency for the calendar year 1921 is $15,086.78. Order will be entered accordingly.*

On reference to the Board, PHILLIPS and GREEN concur in the result only.